# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANE R. HARDEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-12-234-SPS |

## OPINION AND ORDER

The claimant Jane R. Harden requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born July 11, 1973 and was thirty-seven years old at the time of the most recent administrative hearing. (Tr. 112, 663). She has a GED and completed basic EMT school, and has worked as an apartment manager and gambling dealer. (Tr. 141, 649). The claimant alleges that she has been unable to work since July 1, 2006 due to severe depression and seasonal affective disorder, bipolar disorder, anxiety, panic attacks, fibromyalgia, muscle spasms, diverticulitis, irritable bowel syndrome, and gastritis. (Tr. 135).

**Procedural History**

On April 8, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 112-116). Her application was denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 26, 2009. (Tr. 12-23). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-09-491-SPS, and remanded the case for further proceedings. (Tr. 692-700). In the meantime, the claimant filed a subsequent application for benefits and was found disabled beginning March 27, 2009. (Tr. 636). ALJ Michael A. Kirkpatrick held a second administrative hearing and determined that the claimant was not disabled from July 1, 2006 through March 26, 2009 in a written opinion dated August 18, 2011. (Tr.

636-651). The Appeals Council again denied review, so ALJ Kirkpatrick's August 2011 opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a wide range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday. The ALJ also limited the claimant to understanding, remembering, and carrying out simple, one-step tasks and some detailed tasks that did not require intense concentration; working under routine supervision; completing a normal workday and work week from a mental standpoint, and adapting to a work setting; and inability to relate to the general public, but ability to relate superficially to coworkers and supervisors for work purposes. (Tr. 641). The ALJ thus concluded that, although the claimant could not return to her past relevant work, she was nevertheless not disabled from July 1, 2006, through March 6, 2009, because there was work she could perform, *e. g.*, center-punch operator, assembler of electronic accessories, and packer or packager. (Tr. 650).

### Review

The claimant contends that the ALJ's RFC assessment was erroneous because it was not based on a proper longitudinal assessment of the claimant's impairments, specifically with regard to the regular and frequent exacerbations of her impairments.

Because the ALJ does appear to have ignored probative evidence regarding the claimant's mental impairments, the decision of the Commissioner must be reversed.

The claimant was treated by Carl Albert Community Mental Health Center (CAMH) beginning in November of 2005, discharged as a patient on June 20, 2006, and then resumed monthly treatment with CAMH in late 2006. (Tr. 307). The claimant had a crisis evaluation on December 15, 2006, and complained of worsening mood disturbance and anxiety, feelings of helplessness, hopelessness, and suicidal thoughts. (Tr. 368). From January through May 2007, the claimant reported depression and crying multiple times a day, worry, difficulty concentrating or remembering, suicidal thoughts, irritability, and family stressors. She alternated between good and bad days, but reported feeling drained and without motivation, and on May 23, claimant reported that her mood had been wonderful, and she had not been suicidal. (Tr. 363, 366, 394-395, 456, 458). On July 25, the claimant reported that her mood had been better in the past three days, but she had been stressed, frustrated, and angry during the past month, and she had been having difficulty sleeping. (Tr. 452). During a client assessment, the claimant reported that she had been depressed, angry, and frustrated, with difficulty sleeping, multiple crying spells, and daily anxiety, as well as negative thinking on four out of seven days, and excessive worry and anxiety, but was "somewhat better," because she had been in public four times that month (Tr. 472). The next month, the claimant reported being in a good mood for two weeks, but feeling anxious and nervous and only sleeping three to four hours a night. (Tr. 512). In September, the claimant continued to report stress, as well as sleeping during the day and being awake at night, but in October the claimant

reported sleeping 12-16 hours a night and having suicidal thoughts. (Tr. 507, 510). In 2008, the claimant continued to report frequent panic attacks, little appetite, depression and daily crying spells, suicidal thoughts, withdrawing from everyone, anxiety, nerves, difficulty sleeping, and poor appetite. (Tr. 504, 514, 521, 519, 521). On September 12, claimant reported that her motivation had improved and she was taking responsibility for her roles, but by the following month she reported a severe panic attack that had sent her to the emergency room, as well as increased anxiety and nervousness. (Tr. 534, 537). On November 18, claimant reported that her mood had not been good and that she had been sick, and in December she reported that her depression had been better than in previous winters. (Tr. 533, 609). The claimant failed her appointments in January 2009, and in February she reported depression, stress, crying spells, very little motivation, sleeping/staying in bed 15-16 hours a day, and suicidal thoughts. (Tr. 890-891). In March, the claimant reported stressors in her life, anxiety, and sleeping six hours a night. (Tr. 888). The claimant also had frequent consultations with CAMH personnel as to her medications, their effectiveness, and any needed adjustments. (*e. g.*, Tr. 307-13, 354-98, 453-522, 533-41). During the relevant time frame (June 1, 2006 through March 26, 2009), the claimant was assessed Global Assessment of Functioning (GAF) scores of 45, 50, and 41 at CAMHC. (Tr. 308, 370, 384, 491). In November 2006, a state consultative examiner assessed the claimant with a GAF of 57. (Tr. 325).

The claimant's mother completed a Third Party Function Report on April 26, 2009. She stated that the claimant's family worked together to take care of each other, but that her daughter used to be able to work, maintain her home, take care of her

children, and be involved in outside activities, and now struggled to do any of those things. (Tr. 830). She noted her daughter's struggles to sleep, that her daughter sometimes needed reminders to take her medications and often has panic attacks if she goes shopping, and has to call for help and encouragement to finish a task. (Tr. 832). She indicated that her daughter had a hard time admitting her faults and struggles with concentration. (Tr. 834). She further stated that her daughter does not handle stress well, and that she cries often and has to be reminded that she is loved. (Tr. 835).

The ALJ found that the claimant's GERD; irritable bowel syndrome; status post hernia repair; major depression, recurrent, severe, without psychotic features, with seasonal pattern; generalized anxiety disorder; and panic disorder were severe impairments. (Tr. 639). In his written decision, the ALJ acknowledged the claimant's treatment at CAMH, stating:

> I have carefully considered the medical evidence of record available in its entirety, including the treating notes indicating exacerbated symptomatology, discussed herein. I find that the claimant's mental symptomatology caused more than minimal limitation in her ability to perform basic mental work-related activities, but that she still retained, throughout the entire period under consideration, the ability to perform simple, unskilled tasks which did not require interaction with the general public.

(Tr. 645). The ALJ thus concluded that the claimant was not disabled. (Tr. 19). The ALJ asserted that he had conducted a proper longitudinal assessment of the claimant's impairments under 20 C.F.R. 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal

picture of your overall degree of functional limitation."), but his assessment was incomplete for the following reasons.

First, although the ALJ acknowledged that the record contained GAF scores, he specifically refused to consider them, stating, "Because of limited probative value, isolated GAF scores have not been employed as the basis of decision-making herein." (Tr. 645). The disparity between the state consultative examiner's November 2006 opinion and the opinions from CAMH is notable. "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e. g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion]. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have considered whether the claimant's substandard GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion]. Instead, the ALJ refused to consider the evidence at all. *Ramirez*

*v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("'[T]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Second, the ALJ failed to properly account for the Third Party Function Report the claimant submitted, which supports the claimant's complaints of pain. Social Security Ruling (SSR) 06-03p provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939. SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-6. Here, the ALJ recited the statements in the Third Party Function Report, but rejected it using boilerplate language: "[A] lay witness cannot determine whether observed behaviors are medically compelled, or whether they are merely a lifestyle choice on the part of the claimant. Lay witness testimony is, for the most part, dependent upon the subjective complaints of a claimant, which herein are not entirely credible." (Tr. 646). The first problem with his reasoning is that it essentially consists of generalized statements that apply to *every* lay witness opinion. *See Spicer v. Astrue*, 2010 WL 4176313, *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection

of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). *See, e. g.*, *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) ("The ALJ found [claimant's wife] credible in her observations of her husband's activities, and the ALJ should not have discredited her testimony on the basis of its relevance or irrelevance to medical conclusions."), *citing* 20 C.F.R. § 404.1513(d). Second, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement such as the one that he used here. The ALJ is perfectly capable of separating the evidence that is based on the personal observations of the lay witness and, on the other hand, the evidence presented by the lay witness that is based on claimant's subjective complaints. *See also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.") [citation omitted].

Because the ALJ refused to discuss probative evidence inconsistent with his RFC determination, the Court finds he did not properly consider it. Instead, the ALJ should have discussed the evidence supporting his decision and explained his rejection of the evidence that did not. *See, e. g., Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence."). Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma